Filed 9/6/22  Dept. of Forestry & Fire Protection CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| DEPARTMENT OF FORESTRY AND FIRE PROTECTION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>EUNICE E. HOWELL et al.,<br><br>Defendants and Respondents. | C093352<br><br>(Super. Ct. No. CV0900505) |

This case returns to us after we previously ordered a remand with directions for further proceedings relating (primarily) to a postjudgment award of monetary discovery sanctions in favor of defendants Eunice E. Howell, individually and on behalf of Howell's Forest Harvesting, and its employees, Kelly Crismon and J.W. Bush (Howell); Sierra Pacific Industries, Inc. (Sierra Pacific); W.M. Beaty and Associates (Beaty); and multiple landowners (Landowners, and collectively, defendants).

In our prior opinion, we concluded that there was substantial evidence to support the trial court's finding that monetary sanctions were warranted, but that the trial court

1

erred in the manner in which it imposed the sanctions. We remanded with directions for the trial court to reconsider the amount of monetary sanctions awarded to defendants "as a result of" plaintiff's discovery abuses and to calculate an appropriate award of statutory costs for the prevailing party defendants.

Plaintiff California Department of Forestry and Fire Protection (Cal Fire) challenges the award of monetary sanctions in the trial court's decision on remand. It contends the trial court erred because it (1) failed to follow our remand instructions and essentially repeated the same mistakes it made previously, (2) applied the wrong standard of causation, (3) concluded that defendants were not required to file a motion to compel or seek redress for discovery abuses prior to requesting sanctions, and (4) made incorrect assumptions and additional errors in calculating the sanctions award. Cal Fire also challenges the trial court's costs award.

We agree with Cal Fire's first two contentions and therefore reverse and remand (with directions) the part of the trial court's order pertaining to the monetary sanctions award. We affirm the part of the order pertaining to the costs award.

## FACTS AND HISTORY OF THE PROCEEDINGS

Cal Fire previously appealed from a judgment of dismissal (case No. C074879) and various postjudgment awards of fees, costs, and discovery sanctions (case No. C076008). (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, overruled in part as stated in *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516 (*Howell*).) We rely heavily on our prior opinion for the relevant facts and procedure, supplemented where necessary by the record.

### A. Origin of the Moonlight Fire

This case arises from the "Moonlight Fire," a wildfire that ignited in Plumas County on September 3, 2007, and burned approximately 65,000 acres over the course of

2

several weeks.  (*Howell, supra*, 18 Cal.App.5th at p. 162.)  The fire started on property owned by the Landowners and managed by Beaty.  (*Id.* at p. 164.)  Sierra Pacific purchased standing timber on the property and contracted with Howell, a licensed timber operator, to conduct logging operations on the property.  (*Ibid.*)

Cal Fire and the United States Forest Service (USFS) jointly investigated the cause of the fire.  (*Howell, supra*, 18 Cal.App.5th at p. 187.)  In June 2009, Cal Fire and USFS released their nearly 300-page Origin and Cause Investigation Report (the Moonlight Report).  The Moonlight Report concluded that the fire started when a bulldozer operated by Howell's employees (J.W. Bush and Kelly Crismon) struck a rock or rocks, causing superheated metal fragments to splinter off and ignite surrounding forest litter.  (*Id.* at pp. 163, 164; *United States v. Sierra Pac. Indus., Inc.* (9th Cir. 2017) 862 F.3d 1157, 1163.)  The Report also faulted Howell's employees for allowing the fire to spread by leaving the area without inspecting for signs of fire.  (*Ibid.*)

B.      The Moonlight Fire lawsuits

In 2009 and 2010, Cal Fire, Grange Insurance Association, and an assortment of private landowners filed lawsuits against defendants seeking recovery of fire suppression and investigation costs and other monetary damages in the tens of millions of dollars. (*Howell, supra*, 18 Cal.App.5th at pp. 163, 175, fn. 12, 202.)  In a separate but related case, the federal government filed suit against the same defendants for its damages and fire suppression costs.  (*United States v. Sierra Pac. Indus., Inc., supra*, 862 F.3d at pp. 1163-1164.)  Potential damages in the federal action exceeded $800 million.  (*Id.* at p. 1164.)

Over the ensuing four years, the parties engaged in extensive discovery and pretrial motions in the consolidated state court action and concurrent federal action. (*Howell, supra,* 18 Cal.App.5th at p. 165.)  Discovery included more than 400 days of depositions, 428 requests for production, 1163 special interrogatories, and 435 requests

for admission.  There were more than 35 discovery motions, nearly 100 motions in limine, and two cross motions for summary judgment.

In July 2012, the parties settled the federal action, with defendants collectively agreeing to pay $55 million and transfer 22,500 acres of land to the federal government. (*United States v. Sierra Pac. Indus., Inc., supra*, 862 F.3d at pp. 1164-1165.)  The state cases continued after settlement of the federal case.  (*Id*. at p. 1165.)

In July 2013, less than a week before trial in the state court actions, the trial court ruled that none of the plaintiffs could establish a prima facie case and entered a judgment of dismissal in favor of the defendants based on *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367 (*Cottle*).  (*Howell, supra*, 18 Cal.App.5th at pp. 165, 170-171.)  The trial court also granted an oral motion for judgment on the pleadings as to Cal Fire's claims against Sierra Pacific, Beaty, and Landowners.  (*Howell,* at p. 175.)

### C.    The postjudgment motions

After the judgment of dismissal, defendants filed motions for attorney fees, expenses, and discovery sanctions.  (*Howell, supra*, 18 Cal.App.5th at p. 166.)  The motions were based on multiple, overlapping grounds.  Defendants sought monetary and terminating sanctions under two separate sources of authority:  section 2023.030 of the Civil Discovery Act (§ 2016.010 et seq.) and the trial court's inherent common law authority.  (*Howell,* at pp. 190-191.)  (Further undesignated statutory references are to the Code of Civil Procedure.)  Defendants moved for attorney fees as "prevailing parties" on a contractual basis (Civ. Code, § 1717) and as private attorneys general (§ 1021.5). (*Howell,* at p. 198.)  Defendants also moved under section 2033.420, subdivision (a) to recover costs incurred in disproving Cal Fire's denial of certain requests for admission. (*Howell,* at pp. 166, 202.)

In a postjudgment order, the trial court ruled that defendants are entitled to recover their requested fees, expenses, and sanctions.  (*Howell, supra*, 18 Cal.App.5th at pp. 166-

4

167.)  In reaching this conclusion, the court found that Cal Fire had engaged in multiple and repeated discovery abuses.  The trial court specifically described seven "examples" of discovery abuses committed by Cal Fire, namely: (1) false testimony by investigators Joshua White (White) and David Reynolds (Reynolds) regarding concealment of photographs of a white flag, a "fire origin" sketch, and other evidence that appeared to place the point of origin of the fire in a slightly different location (about 10 feet away) from that described in the Moonlight Report; (2) White's destruction of the contemporaneous field notes he prepared during his investigation; (3) the Moonlight Report's false summary of an interview with Howell employee J.W. Bush; (4) the Moonlight Report's omission of an "unsolicited false alibi" from Ryan Bauer, who had been cutting firewood in the area; (5) the Moonlight Report's omission of alleged employee misconduct at the closest federal lookout, known as the Red Rock lookout tower; (6) a false statement in the Moonlight Report that a Howell bulldozer ignited the Lyman Fire; and (7) Cal Fire's failure to produce documents responsive to a request for production relating to the "Wildland Fire Investigation Training and Equipment Fund" (the WiFITER fund), which defendants believed to be an illegal account that provided a financial incentive to hold defendants responsible for the fire.  (*Howell,* at pp. 166, 185-189; *United States v. Sierra Pac. Indus., Inc., supra*, 862 F.3d at pp. 1164, 1170; *United States v. Sierra Pac. Indus.* (E.D.Cal. 2015) 100 F. Supp. 3d 948, 967.)  The trial court's order made clear that these were merely "examples" of Cal Fire's discovery abuses and not intended to be an exhaustive list of its transgressions.

In a separate order, the court found that Cal Fire's misconduct was "so pervasive that it would serve no purpose for the [c]ourt to attempt to recite it all . . . ."  The court indicated that additional examples of Cal Fire's discovery abuses could be found in defendants' briefing.  The court specifically referenced, without analysis, two previously-filed pleadings—one by Sierra Pacific and the other by Beaty—listing almost four dozen "examples" of alleged discovery abuses.

5

In awarding terminating sanctions, "[t]he trial court found that Cal Fire's ' "willful," ' 'repeated and egregious' misuses of the discovery process 'permeated nearly every single significant issue in this case' to an extent that ' "threatened the integrity of the judicial process" ' and made it implausible that defendants could ever receive a fair trial.  The trial court further stated that 'Cal Fire's actions in initiating, maintaining, and prosecuting this action, to the present time [postjudgment] [are] corrupt and tainted. . . . [C]al Fire failed to comply with discovery orders and directives, destroyed critical evidence, failed to produce documents it should have produced months earlier, and engaged in a systematic campaign of misdirection with the purpose of recovering money from Defendants.' " (*Howell, supra*, 18 Cal.App.5th at p. 197.)

In awarding monetary sanctions, the court found that all of defendants' litigation expenses were "inextricably intertwined," in one way or another, with the falsehoods and omissions in the Moonlight Report, which Cal Fire injected into the litigation through its July 2010 discovery responses.  (*Howell, supra*, 18 Cal.App.5th at p. 184.)  Thus, the trial court found that "Cal Fire's discovery abuses from July 2010 forward were the cause of all defense expenses incurred from that point forward."  The trial court collectively awarded the defendants monetary sanctions totaling more than $28 million, representing all (or virtually all) of the attorney fees, expert fees, and other expenses incurred in both the federal and state court actions.  (*Howell,* at pp. 183, 194.)  Specifically, the court awarded $21,100,723.20 to Sierra Pacific; $6,146,901.41 to Beaty/Landowners; and $1,571,741.28 to Howell.  (*Id.* at pp. 183-184.)

D.     The first appeal

Plaintiffs appealed the judgment of dismissal, the postjudgment awards, and the trial court's costs award.  (*Howell, supra*, 18 Cal.App.5th at pp. 163-164, 202-203.)  On appeal, we (1) affirmed the trial court's order granting the motion for judgment on the pleadings, (2) reversed the judgment of dismissal based on *Cottle, supra*, 3 Cal.App.4th

6

1367, (3) affirmed the court's imposition of terminating sanctions, and (4) reversed the attorney fee awards. (*Howell,* at pp. 203-204.)

Regarding the monetary sanctions award, we affirmed the trial court's conclusion "that monetary sanctions were warranted" in light of Cal Fire's discovery violations. (*Howell, supra*, 18 Cal.App.5th at p. 193.) We discussed each of the seven examples of discovery abuse identified by the trial court, and analyzed whether the findings were supported by substantial evidence. (*Ibid.*) We concluded that two of the seven findings—the omission of information related to the Red Rock lookout and the omission of Bauer's alibi—were not supported by substantial evidence. (*Ibid.*) But we concluded there was substantial evidence to support the other findings of discovery misuse: White's untruthful or evasive deposition testimony regarding the white flag; spoliation of White's field notes; the Moonlight Report's false summary of Bush's interview statement; the Moonlight Report's incorporation of the false Lyman Fire report; and the delayed production of responsive WiFITER fund documents. (*Ibid.*) We did not decide whether any of the other alleged discovery abuses included in defendants' lists were supported by substantial evidence.

Although we upheld the conclusion that monetary sanctions were warranted, we took issue with the manner in which the trial court imposed the sanctions. (*Howell, supra*, 18 Cal.App.5th at pp. 184, 193-194.) We rejected the trial court's reasoning that all expenses incurred since the inception of litigation could be imposed as sanctions because they were "inextricably intertwined" with the falsehoods and omissions in the Moonlight Report. (*Id.* at p. 194.) We held that under section 2023.030 the trial court was statutorily limited to awarding only those " 'reasonable expenses, including attorney's fees, incurred . . . as a result of' a misuse of the discovery process." (*Id.* at p. 194.)

We concluded that the motions at issue provided "ample evidence" of when fees were incurred by defendants, but did "little to explain how those fees were incurred as a

result of Cal Fire's discovery abuses." (*Howell, supra*, 18 Cal.App.5th at p. 195.) Therefore, we were "unable to ascertain from the record which attorney fees and expert fees and expenses were incurred as a result of the discovery misuses for which we have concluded there is substantial evidence in the record to support imposition." (*Ibid*.) We reversed the trial court's award of monetary sanctions and remanded the matter for the trial court to conduct a hearing to redetermine the reasonable expenses, including attorney's fees, incurred by defendants as a result of Cal Fire's discovery violations. (*Id.* at pp. 195, 204; accord, *Dep't of Forestry & Fire Prot. v. Superior Court* (Oct. 31, 2018, C087374) [nonpub. opn.] [2018 Cal. App. Unpub. LEXIS 7363, at pp. *10-14] (*Howell II*).)

We reversed the trial court's award of costs to Howell, and remanded for a new calculation of costs to be awarded to Sierra Pacific, Beaty, and Landowners under sections 1032 and 1033.5 for defending against Cal Fire's action. (*Howell, supra*, 18 Cal.App.5th at pp. 164, 183, 203-204.)

E.     Proceedings on remand

On remand, the parties submitted extensive additional briefing on the reasonable expenses incurred by defendants as a result of Cal Fire's discovery abuses. To meet their burden, defendants first prepared a *nonexhaustive* list of Cal Fire's discovery abuses. Sierra Pacific, for example, identified 38 alleged discovery abuses, sorted into four categories:  untruthful or evasive deposition testimony, false and evasive discovery responses, disobeyed discovery orders, and spoliation.

To establish a causative connection between defendants' reasonable fees and expenses and Cal Fire's alleged discovery abuses, each defendant filed a declaration with a chronological, month-by-month summary of the total time spent and fees/expenses performing various tasks. Counsel then described, in a generalized way, how the tasks

8

were a result of Cal Fire's discovery abuses.  The resulting declarations totaled nearly 800 pages.

Based on the declarations, defendants suggested different approaches for how the trial court could determine a reasonable award of monetary sanctions.  For example, defendants argued the court could award all fees and expenses incurred after March 5, 2010—the date of the first discovery abuse—due to the pervasive nature of Cal Fire's discovery abuses, which required defendants to uncover and expose Cal Fire's "false" and "fraudulent" narrative.  Alternatively, Sierra Pacific and Beaty/Landowners argued that the trial court could award all fees and expenses after March 2010, less deductions for time spent working on certain tasks that were more "attenuated."  (Howell, in contrast, claimed to be seeking only fees and expenses "directly" related to Cal Fire's discovery abuses.)

Cal Fire argued that the trial court should consider only the discovery abuses found to be supported by substantial evidence in *Howell*, and that the amount of the award should be limited to reasonable expenses "directly related" to those abuses.  Cal Fire argued that the award should not include fees and costs incurred in generally defending the case.  Cal Fire further argued that any sanctions award must be tied to a specific discovery motion, such as a motion to compel.

In October 2020, after a two-day hearing, the trial court issued its decision on remand.  Adopting a "substantial factor" test to determine causation, the trial court concluded that virtually all the fees and expenses incurred by defendants were "a result of" Cal Fire's sanctionable discovery misconduct.

In applying the "substantial factor" test, the court declined to link specific fees and expenses to any particular instances of discovery misconduct, or to limit Cal Fire's discovery misconduct to the "examples" affirmed in *Howell*.  Instead, the court broadly found that "Cal Fire's discovery abuses and misuses extend[] far beyond those mentioned in [*Howell*]", and were so pervasive throughout the litigation that it could not "imagine

9

any expenditure the defendants incurred as a result of Cal Fire's numerous deliberate and egregious discovery abuses and misuses that could not also be characterized as fees and expenses for generally defending the case." Additionally, the court concluded that "defendants were not required to file a motion to compel or seek redress for any discovery abuses or misuses prior to requesting monetary sanctions."

The court ultimately awarded Sierra Pacific, Beaty, and Landowners all their requested fees and expenses from March 2010 (the date defendants received the Moonlight Report as a discovery response) through July 2013 (the date of the pre-trial hearings), excluding only (1) fees incurred by Sierra Pacific's *associate* counsel and paralegals, (2) certain expenses associated with the preparation of demonstrative visual exhibits (which previously had been sought as litigation costs), and (3) certain fees and expenses incurred in respect to the federal action. The court reasoned that "all of the defendant's expert fees and a significant portion of the defendant's attorneys' fees . . . were [incurred] as a result of Cal Fire's sanctionable conduct of misusing and abusing the discovery process pursuant to CCP section 2023.030." The court did not remove any expenses incurred in the state cases from March 5, 2010, through July 2013, due to lack of causation.

The court awarded Howell all requested attorney and expert fees and expenses incurred from March 2010 forward, including fees and expenses incurred after July 2013. It is not clear whether the differential treatment of Howell was intentional.

The trial court awarded $1,384,145 in monetary sanctions to Howell; $8,621,480.63 in sanctions to Sierra Pacific; and $2,681,816.68 in sanctions to Beaty/Landowners. The trial court also awarded $1,214,296.93 in costs to Sierra Pacific, and $299,798.47 in costs to Beaty/Landowners.

Cal Fire filed a timely notice of appeal on December 17, 2020.

10

DISCUSSION

Cal Fire challenges the trial court's sanctions award on several grounds. Cal Fire argues that the trial court abused its discretion because it (1) failed to follow this court's remand instructions, (2) applied the wrong legal standard of causation, (3) awarded monetary sanctions for discovery misconduct without a predicate motion to compel, and (4) made incorrect assumptions and other mistakes in determining the amount of the award. We agree with the first two contentions and reverse and remand for further proceedings on that basis. We explain below.

I

*Abuse of Discretion*

Cal Fire argues that the trial court's award of sanctions must be reversed because the trial court applied the wrong standard of causation and failed to follow our remand instructions. We agree.

A.    Background law

Before addressing the merits of Cal Fire's claim, we begin with a brief discussion of the legal principles governing an award of monetary sanctions.

There are multiple sources of authority for sanctions under California law. The type of sanctions available and the procedure for imposing them depends on the circumstances justifying the award. For example, section 128.5 authorizes sanctions for actions or tactics that are made in bad faith, frivolous, or solely intended to cause unnecessary delay. (*Levy v. Blum* (2001) 92 Cal.App.4th 625, 635; § 128.5, subd. (a).) However, by its terms, section 128.5 does not apply to discovery requests, responses, objections, and motions. (§ 128.5, subd. (e).)

Discovery sanctions are governed by the Civil Discovery Act. (§ 2023.030.) Under section 2023.030 of the Act, a court may sanction "anyone engaging in conduct

11

that is a misuse of the discovery process." (§ 2023.030.) Misuses of the discovery process include, but are not limited to, (1) failing to respond to an authorized method of discovery, (2) making an evasive response to discovery, (3) disobeying a court order to provide discovery, (4) altering or destroying evidence in response to (or in anticipation of) a discovery request, and (5) willfully providing a false discovery response. (§ 2023.010; *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 74 (*Kwan*); *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 333-334; *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12; *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1162 (*Sherman*).)

The discovery statutes authorize a range of penalties for conduct amounting to discovery misuse, including monetary, issue, evidence, and terminating sanctions. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 790 (*Cornerstone*); § 2023.030, subds. (a)-(e).) The statutes governing each particular discovery method identify the types of sanctions that are available for a given discovery abuse. (*London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1004-1007; *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422-1423.) The most common sanction for a misuse of discovery is a monetary sanction, which is authorized in the context of nearly every proceeding under the Civil Discovery Act. (Cal. Forms of Pleading and Practice (2022) ch. 192, Discovery: Sanctions for Discovery Misuse, § 192.15; Hogan & Weber, Cal. Civil Discovery (2021) ch. 15, § 15.4; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.)

Section 2023.030, subdivision (a) of the Civil Discovery Act delineates the trial court's authority to issue monetary sanctions. (*Kwan, supra*, 58 Cal.App.5th at p. 73.) It provides that the court may impose a monetary sanction ordering that one engaging in misuse of the discovery process pay the reasonable expenses incurred "as a result of" that conduct. (§ 2023.030, subd. (a).)

12

Although a trial court has broad discretion in setting the amount of a monetary sanction, the court must exercise its discretion in a manner consistent with the underlying purpose of the law. (*Cornerstone, supra,* 56 Cal.App.5th at p. 789.) The purpose of discovery sanctions is to compel disclosure of discoverable information, prevent abuse of the discovery process, and protect the interests of the party entitled to the discovery. (*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1475; *Do v. Superior Court* (2003) 109 Cal.App.4th 1210, 1213; *Siry Investment, L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1117, review granted July 8, 2020, S262081.) A court may use monetary sanctions to compensate a victim for the harm done by the discovery abuse, but the court cannot use sanctions to punish the offending party. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223; *Doppes v. Bentley Motors, Inc., supra*, 174 Cal.App.4th at p. 992; *McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210.) In choosing a sanction, the trial court should attempt to "tailor the sanction" to the discovery abuse. (*Doppes v. Bentley Motors, Inc., supra*, at p. 992.) " 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." ' [Citation.]" (*Doppes v. Bentley Motors, Inc., supra*, 174 Cal.App.4th at p. 992.) The sanction imposed should not provide a windfall, putting the prevailing party in a better position than if it had obtained the requested discovery. (*Williams, supra*, at p. 1223; *Kwan, supra*, 58 Cal.App.5th at pp. 74-75.)

B.     Standard of review

We review a trial court's sanctions order under the deferential abuse of discretion standard. (*Kwan, supra,* 58 Cal.App.5th at p. 73.) Under this standard, the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and

13

capricious.  (*Ibid*; *Park v. Law Offices of Tracey Buck-Walsh* (2021) 73 Cal.App.5th 179, 188.)

However, when an appellate court reverses with directions, those directions "are binding on the trial court and *must* be followed."  (*Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982.)  Action which does not conform to the directions is unauthorized and void.  (*Ibid*; *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.)  The remittitur directions are contained in the dispositional language of the prior opinion, which must be construed in conjunction with the opinion as a whole.  (*Ayyad v. Sprint Spectrum, L.P., supra*, 210 Cal.App.4th at p. 859.)  Whether the trial court correctly interpreted the directions is an issue of law, subject to de novo review.  (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 997.)

C.     Failure to Follow Remand Instructions

In this case, we conclude that the trial court abused its discretion by failing to comply with our remand instructions in *Howell, supra*, 18 Cal.App.5th 154.

When initially moving for sanctions, defendants argued that Cal Fire's discovery misconduct was so pervasive and appalling—infecting virtually every aspect of the litigation—that they should recover all their defense fees and costs as sanctions.  The trial court agreed.  The court found that all of defendants' litigation expenses were "inextricably intertwined," in one way or another, with the falsehoods and omissions in the Moonlight Report, which were injected into the litigation through Cal Fire's discovery responses.  (*Howell, supra*, 18 Cal.App.5th at pp. 184, 194.)  Thus, the court awarded defendants all their claimed expenses from the inception of the litigation, including expenses incurred prior to Cal Fire's discovery abuses.  (*Id*. at pp. 193-194.)

In reversing that order, we rejected the notion that defendants could be awarded all their fees and expenses merely because they showed Cal Fire's investigation was flawed or that the Moonlight Report was (in certain respects) deficient or false.  (*Howell, supra*,

14

18 Cal.App.5th at pp. 194-195.)  We noted that, unlike a motion for sanctions under section 128.5, a motion for monetary sanctions under section 2023.030 does not permit a trial court to order a party to pay reasonable expenses incurred as a result of frivolous or bad-faith actions.  (*Id*. at p. 195.)  We held that under section 2023.030, the trial court was statutorily limited to awarding only those " 'reasonable expenses, including attorney's fees, incurred . . . as a result of' a misuse of the discovery process." (*Id*. at p. 194.)  And we concluded that it was an abuse of discretion for the trial court to award any sanctions not authorized by section 2023.030, including expenses incurred prior to Cal Fire's misuses of the discovery process.  (*Ibid*.)

Our ruling was not solely concerned with the timing of when the expenses were incurred.  If it were, there would have been no need for us to remand for further proceedings.  We could have simply modified the judgment to disallow any expenses incurred prior to Cal Fire's discovery misconduct and left the remainder of the award intact.  Instead, we held that it was an abuse of discretion for the trial court to award fees incurred prior to Cal Fire's misuses of the discovery process *"and any fees that were not the result of those misuses*." (*Howell, supra*, 18 Cal.App.5th at p. 194, italics added.) Because we were unable to ascertain from the record which expenses were incurred as a result of discovery misuses for which there is substantial evidence in the record, we remanded the matter to the trial court for further hearing, with instructions to determine the reasonable expenses incurred as a result of Cal Fire's misuses of the discovery process.  (*Id*. at p. 195; see also *Howell II, supra,* C087374 [2018 Cal. App. Unpub. LEXIS 7363, at pp. *9-13].)

On remand, the trial court again concluded that Cal Fire's discovery abuses were the cause of all defense expenses incurred in the litigation.  The trial court ruled that from March 5, 2010 forward, Cal Fire misused the discovery process by repeatedly providing the Moonlight Report as a verified response to discovery, even though it contained false and misleading statements.  It stated: "To find that the defense should have treated any

15

portion of the Moonlight [R]eport as credible . . . when the defense continued to uncover omissions . . . and false statements in the report, and realize the author of the report was untruthful and evasive in his deposition testimony and committed spoliation of evidence[,] would defy common sense." Thus, the trial court awarded all reasonable fees and expenses incurred in defending the case, from the time Cal Fire first provided the Moonlight Report as a verified discovery response (March 5, 2010) through the date of the pre-trial hearings (July 2013). The court expressly stated that it could not "imagine any expenditure the defendants incurred as a result of Cal Fire's numerous deliberate and egregious discovery abuses and misuses that could not also be characterized as fees and expenses for generally defending the case."

As a result, the trial court's award included numerous fees and expenses that have no apparent causal connection to any discovery violation, such as fees and costs defendants incurred in responding to Cal Fire's discovery, responding to motions brought and won by Cal Fire, researching insurance coverage issues, attending case management conferences, and preparing for trial. The court made no effort to identify any specific discovery misuses (other than the ones previously described in *Howell*) or to explain how any of the fees incurred by defendants were linked to Cal Fire's discovery abuses, except in the general sense that defendants were required to "investigate and unravel" false or misleading statements in the Moonlight Report or other discovery responses.

As we explained in *Howell*, monetary discovery sanctions are not intended to compensate victims for expenses incurred as a result of bad-faith actions. (*Howell, supra*, 18 Cal.App.5th at p. 195.) Nor are they intended to be a broad exception to the general rule that attorney's fees are not recoverable by the prevailing party. Monetary sanctions are intended to protect the interests of the party entitled to the discovery and, consistent with this purpose, they are limited to the reasonable expenses incurred as a result of discovery violations. (*Siry Investment, L.P. v. Farkhondehpour, supra*, 45 Cal.App.5th at p. 1117, review granted.)

16

Here, under the guise of awarding monetary sanctions for discovery abuses, the trial court has awarded defendants their fees and expenses for generally defending the case. The court essentially accepted defendants' argument that Cal Fire's discovery abuses at the outset of the case—the false/misleading statements in the Moonlight Report and the destruction of White's field notes—drove the entire defense and that, because the discovery misuse was pervasive, essentially everything the defendants did was recoverable as "fruit of the poisonous tree." This was little more than a variation of the reasoning, rejected in *Howell*, that all defense expenses were inextricably intertwined with the falsehoods and omissions in the Moonlight Report.

The trial court's decision is inconsistent with our instructions. And because the trial court failed to follow our instructions, we are again unable to ascertain from the record which fees and expenses were incurred as a result of discovery misuses for which there is substantial evidence in the record to support imposition. Accordingly, we reverse the part of the court's order pertaining to the monetary sanctions award and remand with directions for the court to determine the reasonable expenses incurred as a result of misuses of the discovery process.

D.     Wrong standard of causation

Cal Fire argues that the trial court also abused its discretion by applying the substantial factor test of causation. Again, we agree.

The principles governing statutory construction are well established. " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved

17

and the legislative history.  [Citation.]' " (*Council of San Benito County Governments v. Hollister Inn, Inc.* (2012) 209 Cal.App.4th 473, 488.)  " 'In the end, we " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" (*Li v. Superior Court* (2021) 69 Cal.App.5th 836, 856.)  We are not bound by the trial court's conclusions because the interpretation of a statute is a question of law, which we review de novo.  (*Council of San Benito County Governments v. Hollister Inn, Inc., supra*, at pp. 488-489.)

The statutory language at issue limits monetary sanctions for discovery misuse to the "reasonable expenses, including attorney's fees, incurred by anyone *as a result of that conduct*."  (§ 2023.030, subd. (a), italics added.)  There is no dispute that the phrase "as a result of" connotes an element of causation, but the parties disagree as to what test of causation should apply.

Defendants argue, as they did below, that the substantial factor test should apply.  " 'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.'  [Citation.]  Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor' [citation], but a very minor force that does cause harm is a substantial factor [citation]." (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79; 1 CACI No. 430.)  Under the substantial factor test, defendants contend they merely needed to show that Cal Fire's discovery misuses were a substantial factor in causing the defense expenses, even if discovery misconduct was not the sole or even predominant cause of such expenses.

Cal Fire argues that a traditional tort standard of causation is inappropriate here. Cal Fire contends that the purposes underlying the discovery statutes, and decisional authorities, establish that a monetary sanction under section 2023.030 must be limited to

18

reasonable expenses "directly related" to the misuse and "necessary to compel compliance."

We agree with Cal Fire that the trial court erred by applying the substantial factor test. As discussed, a monetary discovery sanction is intended to be compensatory rather than punitive in nature. (See Part I.A, p. 13, *ante*.) A court may use monetary sanctions to redress the harm caused by the misuse of discovery, but the sanction may not be used to punish the offending party or put the prevailing party in a better position than if it had obtained the requested discovery. (*Ibid.*) If an award includes fees or expenses that would have been incurred even without the misconduct, then it has crossed the boundary from compensation to punishment, putting the prevailing party in a better position than if it had obtained the requested discovery at the outset. Thus, we conclude the statute demands a direct causal relationship between the discovery violation(s) and the expenses incurred.

Our interpretation is buttressed by the cases that have addressed causation in the context of monetary sanctions. Such cases have held that the amount of a monetary sanction award should reflect the actual fees and costs incurred as a result of the misconduct, which is usually the amount spent or incurred to obtain compliance with a discovery request. (See *In re Marriage of Niklas* (1989) 211 Cal.App.3d 28, 37-38; *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 262-263.) In contrast, trial courts have declined to award expenses when the moving party cannot show the expenses were caused by the misconduct or when the expenses would have been incurred even without the misconduct. (*Cornerstone, supra,* 56 Cal.App.5th at pp. 795, 797; *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1179 [concluding that a monetary discovery sanction under former section 2023 may include attorney's fees and other reasonable expenses "directly related" to the discovery misuse]; accord, 27B Cal.Jur.3d (2022) Discovery and Depositions, § 335; Thomas, Cal. Civil Courtroom Handbook & Desktop Reference (2021 ed.), ch. 25, Sanctions and Contempt, § 25:36; see also *Baddie v. Berkeley*

*Farms* (9th Cir. 1995) 64 F.3d 487, 490 [expenses are incurred "as a result of the removal" under 28 U.S.C. § 1447 only if they are incurred as a direct result of removal, and would not have been incurred had the case remained in state court]; *Avitts v. Amoco Prod. Co.* (5th Cir. 1997) 111 F.3d 30, 32 [same].)

We refuse to treat section 2023.030 as a surrogate for section 128.5, or to transform it into a broad exception to the default rule that each party must bear its own attorney's fees. Thus, we conclude the trial court erred by applying a substantial factor test of causation and reverse and remand the monetary sanctions award on this basis as well. (This renders it unnecessary for us to consider Cal Fire's arguments that the court made "incorrect assumptions and harmful mistakes" in its decision.)

### E.      Guidance on remand

For guidance on remand, we make the following observations. First, defendants may not recover as monetary sanctions all the fees and expenses they incurred defending the case solely because they defeated Cal Fire's claims, showed that Cal Fire's investigation was flawed, or established that the Moonlight Report was (in some manner) deficient or false. (*Howell, supra*, 18 Cal.App.5th at pp. 194-195.) Defendants are limited to recovering expenses incurred as a result of discovery violations. (*Id.* at p. 195; accord, *Cornerstone, supra,* 56 Cal.App.5th at pp. 797-798 [denying as too attenuated defendants' theory that they would not have had to prepare for trial if plaintiffs did not conceal evidence during discovery].)

Second, the trial court must identify the specific discovery misuses upon which the award is based. We acknowledge that detailed findings are not usually required for issuance of sanctions in routine discovery disputes. (*Cal. Shellfish v. United Shellfish Co.* (1997) 56 Cal.App.4th 16, 26.) However, those disputes generally involve the mandatory imposition of monetary sanctions against a party who unsuccessfully makes or opposes a motion to compel a specific answer or production under a discovery statute. In

20

such a scenario, there is no question as to the conduct constituting the grounds for imposing the sanctions. This case is different. Here, there is neither a mandate for sanctions nor any clear delineation of the specific acts upon which the requested sanctions are based. Instead, defendants filed post-judgment motions seeking to recover all (or virtually all) defense expenses based on generalized accusations of "pervasive" discovery abuses, supported only by a vague and fluctuating list of "examples"—many of which have no discernable connection to any discovery violation.

Under the unique circumstances of this case, principles of due process and effective appellate review require that the trial court's order delineate the specific misuses of discovery upon which the award is based. (See *First City Properties v. Macadam* (1996) 49 Cal.App.4th 507, 515-516; *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 978, superseded by statute on other grounds as stated in *County of Monterey v. Mahabir* (1991) 231 Cal.App.3d 1650, 1653; see also §§ 128.5, subd. (c), 177.5.)

Third, once the court has identified the specific misuses of discovery justifying the award, the court must determine which fees and expenses were incurred as a result of those discovery misuses. The record must be sufficient to explain *how* the fees and expenses were incurred as a result of the discovery misuses to which they relate. (*Howell, supra*, 18 Cal.App.5th at p. 195.) For example, if the trial court found Cal Fire misused the discovery process by relying on a fraudulent statement in the Moonlight Report, the record must explain how and when defendants discovered that the statement was fraudulent, and the fees and expenses necessary to compensate them for the discovery violation. Perfection is not required; the court may use estimates in calculating and allocating fees and expenses. But the court may not award defendants an aggregation of all fees they expended in the case based on a generalized finding of numerous, unspecified discovery abuses.

21

Fourth, after the court determines what fees and expenses were incurred as a result of Cal Fire's misconduct, the trial court must apply the principle of reasonableness to determine whether the fees and expenses incurred were "reasonable." (*Cornerstone, supra,* 56 Cal.App.5th at p. 791; *Argaman v. Ratan, supra,* 73 Cal.App.4th at p. 1179 [an award of monetary sanctions may not exceed the reasonable expenses actually incurred].)

II

*Lack of Predicate Motion to Compel*

In its decision on remand, the trial court concluded that defendants were not required to file a motion to compel prior to requesting monetary sanctions for Cal Fire's discovery misuses. Cal Fire argues that the trial court erred by awarding monetary sanctions without a predicate discovery motion. Cal Fire contends that section 2023.030 only authorizes a court to impose monetary sanctions " '[t]o the extent authorized by' the specific provision of the Discovery Act that governs the discovery method at issue." According to Cal Fire, this language means that, in almost all cases, a court is authorized to impose monetary sanctions only against a party who unsuccessfully makes or opposes a discovery motion, such as a motion a to compel. Here, except for the WiFITER fund documents, defendants never filed a motion to compel or other discovery motion. Thus, Cal Fire contends any monetary sanctions award must be limited to the reasonable expenses incurred as a result of the WiFITER discovery abuses.

Defendants contend that Cal Fire forfeited this argument by failing to raise it in the prior appeal and that law of the case prevents us from considering it here. In any event, defendants contend, the argument lacks merit.

We agree that law of the case bars Cal Fire from challenging the trial court's authority to impose monetary sanctions without a predicate discovery motion, but only *as to the discovery misuses for which we concluded there was substantial evidence to support imposition.*

22

Under the doctrine of law of the case, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301-302.) As a general rule, the doctrine applies only to issues which were both presented and determined in the prior appeal. (*Bovard v. Am. Horse Enters.* (1988) 201 Cal.App.3d 832, 841.) However, an exception to the doctrine has been recognized where the prior appellate judgment could not have been rendered without implicitly deciding the issue, even though it was not expressly mentioned in the decision. (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505; accord, *City of Oakland v. Superior Court* (1983) 150 Cal.App.3d 267, 278.)

In our prior opinion, we confronted the issue whether there was substantial evidence to support a finding that Cal Fire engaged in a misuse of the discovery process. (*Howell, supra*, 18 Cal.App.5th at pp. 192-193.) We concluded that there was substantial evidence to support a finding of discovery misuse as to five of the seven examples identified by the trial court. (*Ibid*.) Although the requirement of a predicate motion was not raised as an argument by counsel, or mentioned in our opinion, we could not have rendered this opinion without deciding that a predicate motion was not required as to those discovery misuses, and this is now law of the case.

However, our opinion did not decide whether there was substantial evidence in the record to support imposition of sanctions based on any other alleged misuses of the discovery process. (*Howell, supra*, 18 Cal.App.5th at pp. 192-193, 195; see also *id*. at p. 198.) It was unnecessary to our decision. Thus, our prior decision did not foreclose Cal Fire from challenging on remand the trial court's authority to impose monetary sanctions for other alleged discovery violations.

Turning to the merits, we agree with Cal Fire that, under the discovery statutes, a party subject to misuse of the discovery process *usually* must seek sanctions as part of a

motion to compel. " 'It is a central precept to the Civil Discovery Act . . . that civil discovery be essentially self-executing. [Citation.]' [Citation.]" (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1291; accord, *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1111.) "Conduct frustrates the goal of a self-executing discovery system when it requires the trial court to become involved in discovery because a dispute leads a party to move for an order compelling a response." (*Clement v. Alegre, supra*, at pp. 1291-1292.) To further this purpose, the discovery statutes ordinarily require that a motion for sanctions be connected to a motion to correct or cure the perceived discovery defect. (See, e.g., §§ 2031.320, subd. (b), 2023.030, subd. (a).) For this reason, the amount of sanctions imposed typically is based on the fees and expenses incurred in compelling compliance with a specific discovery request. (*Argaman v. Ratan, supra,* 73 Cal.App.4th at p. 1179.)

However, in a proper case, a court may entertain a motion for sanctions without a corresponding motion to compel, such as where a motion to comply would have been futile, where the evidence was intentionally destroyed, where the answer given was willfully false, where the misconduct was not discovered until after the time for bringing a motion to compel had expired, or other extraordinary circumstances. (*Sherman, supra,* 67 Cal.App.4th at pp. 1162-1164; *New Albertsons, Inc. v. Superior Court, supra*, 168 Cal.App.4th at p. 1426; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1546; *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36, superseded by statute on other grounds as stated in *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1595; *Saxena v. Goffney, supra*, 159 Cal.App.4th at p. 334; see also *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1456.)

On this record, we are unable to ascertain whether defendants were required to file a predicate motion to compel for the other alleged discovery abuses, both because we do not know the nature of the specific discovery violation, and because we do not know how and when defendants discovered the violation. Because we are remanding the case for

24

other reasons, we shall direct the trial court to determine, with findings, whether a predicate motion to compel was required for each discovery misuse upon which the award is based (except those misuses previously identified and found to be supported by substantial evidence in *Howell*).

III

*Costs Award*

Cal Fire also challenges the trial court's statutory costs award. Cal Fire argues: (1) the trial court failed to apportion costs between Cal Fire and the private party plaintiffs, (2) the trial court improperly included $24,286.86 in costs that Sierra Pacific had agreed to withdraw, and (3) the trial court improperly awarded Sierra Pacific $172,564.37 in deposition costs related to the federal action. Defendants do not oppose reducing the award by the $24,286.86 in costs that Sierra Pacific agreed to withdraw, but contend the award should otherwise be affirmed.

A.    Additional facts

Prior to the first appeal, the trial court entered three separate orders awarding costs. (*Howell, supra*, 18 Cal.App.5th at p. 183.) To Beaty and Landowners, the trial court awarded statutory costs in the amount of $583,173.15. (*Ibid*.) To Sierra Pacific, it awarded costs in the amount of $2,852,209.34. (*Ibid*.) To Howell, it awarded costs in the amount of $417,604.06. (*Ibid*.) In *Howell, supra*, 18 Cal.App.5th 154, we concluded that only Sierra Pacific, Beaty, and Landowners were entitled to a statutory award of costs, as prevailing parties against Cal Fire. (*Id*. at pp. 183, 204.) Because the trial court's orders awarding costs did not differentiate costs incurred by defendants in response to Cal Fire's action, we remanded with directions for the trial court to determine an appropriate award of costs to Sierra Pacific, Beaty, and Landowners. (*Ibid*.)

On remand, the trial court awarded $1,214,296.93 in costs to Sierra Pacific, and $299,798.47 in costs to Beaty/Landowners.

25

B.    Analysis

Under section 1032, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).)  Section 1033.5 identifies which costs are allowable as costs and which costs are prohibited unless otherwise authorized by law. (§ 1033.5, subd. (a).)  Under section 1033.5, subdivision (c)(4), costs that are neither permitted nor prohibited "may be allowed or denied in the court's discretion." (§ 1033.5, subd. (c)(4).)  Any costs awarded must be "incurred," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." (§ 1033.5, subd. (c)(1), (2) & (3).)  We review a trial court's award of costs for abuse of discretion. (*Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 834.)

We conclude that Cal Fire has failed to meet its burden to show the trial court abused its discretion.  Cal Fire's argument that defendants failed to apportion costs amounts to a single sentence in its opening brief, citing to two pages from Cal Fire's opposition brief below.  This minimal showing, unsupported by adequate citations to the record, is insufficient to show an abuse of discretion. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [the trial court's ruling is presumed correct and the burden of demonstrating error rests on the appellant]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 [matters set forth in points and authorities are not evidence].)

Similarly, other than arguing that the $172,564.37 in deposition costs relate to the federal action, Cal Fire has failed to explain why the depositions were not reasonably necessary to the conduct of the litigation or why the amount claimed was unreasonable. Defendants, in contrast, explained to the trial court that the depositions were necessary because several key witnesses were federal employees and the United States government refused to allow its employees to be deposed in the state action.

26

We accept the concession regarding the $24,286.86 in costs that Sierra Pacific agreed to withdraw, but Cal Fire has otherwise failed to meet its burden to show an abuse of discretion.  Accordingly, we shall modify the costs award to reduce the amount awarded to Sierra Pacific by $24,286.86, and affirm the costs award as modified.

## DISPOSITION

The postjudgment order imposing monetary discovery sanctions against Cal Fire is affirmed as to the costs award, but the part of the order pertaining to the monetary sanctions award is reversed and remanded for the trial court to determine the reasonable expenses incurred by defendants as a result of Cal Fire's misuses of the discovery process, in a manner consistent with this opinion.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278.)

 

 

_____

HULL, J.

We concur:

_____

ROBIE, Acting P. J.

_____

DUARTE, J.

27